# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | | |
|---|---|---|
| Edward D. Jones & Co., L.P., | ) | Civil Action No.: 1:20-cv-03775-JMC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| George (Heyward) Barnes, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Edward D. Jones & Co., L.P. filed this action against Defendant George (Heyward) Barnes alleging his actions constitute a breach of his employment contract and violate the South Carolina Trade Secrets Act ("SCTSA"), S.C. Code Ann. §§ 39-8-10 to -130 (West. 2020) and the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. §§ 1832–39.[1] (*See* ECF No. 1 at 15 ¶ 55–19 ¶ 88.)

This matter is before the court to address Plaintiff's Motion for Temporary Restraining Order (the "TRO Motion") pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. (ECF No. 5.) Defendant has appeared in this matter and opposes the TRO Motion in its entirety.[2] (*See*

---

[1] The DTSA amended various sections of the Economic Espionage Act of 1996, 18 U.S.C. §§ 1831–1839.

[2] Additionally, Defendant filed a Motion to Dismiss pursuant to Rule 12(b)(1), arguing that the court lacks jurisdiction because at the time it filed its TRO Motion, Plaintiff had not filed with the Director of the Financial Industry Regulatory Authority ("FINRA") a statement of claim "requesting permanent injunctive relief." (ECF No. 8 at 6 (citing FINRA Code of Arbitration for Indus. Disputes, Rule 13804(a)(2)).) Plaintiff opposed the Motion to Dismiss arguing that it had sufficiently satisfied the filing requirement by amending its statement of claim on November 2, 2020, to include a request for a permanent injunction. (*See* ECF No. 17 at 2, 3.) Upon its review, the court observes that case law supports Plaintiff's argument that an amended statement of claim seeking permanent injunctive relief filed before issuance of the temporary restraining order is sufficient to confer jurisdiction. *See, e.g., Hilliard v. Clark*, No. 1:07-cv-811, 2007 WL 2458140, at *1 (W.D. Mich. Aug. 24, 2007) ("Defendants argue this Court lacks subject matter jurisdiction and the action should be dismissed because Plaintiff failed to file, at the same time as it filed for injunctive relief with this Court, the statement of claim with the Director as required by 13804(a)(2) . . . . As the existing TRO was issued after the statement of claim was filed with the

1

ECF No. 9.) After full consideration of Plaintiff's TRO Motion, Complaint for Damages and Injunctive Relief, Defendant's Memorandum of Law in Opposition to Plaintiff's TRO Motion, Plaintiff's Reply in Support of its TRO Motion, the parties' arguments, and all other matters presented, the court **GRANTS** Plaintiff's TRO Motion. (ECF No. 5.)

## I.    JURISDICTION

The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) based on Plaintiff's allegations that the action is between citizens of different states and the amount in controversy exceeds the sum of $75,000.00. (*See* ECF Nos. 1 ¶¶ 7–8, 1-5 ¶ 17.) Plaintiff alleges that it is a Missouri company, with its principal place of business in St. Louis, Missouri. (ECF No. 1 at 2 ¶ 7.) Plaintiff further alleges that Defendant is a resident of Aiken, South Carolina. (*See id.* ¶ 8.) Moreover, after considering the Complaint's allegations, the court is satisfied that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. (*See* ECF No. 1-5 at 4 ¶ 17.)

In addition to its jurisdiction under § 1332, this court also has subject matter jurisdiction over Plaintiff's DTSA claim via 28 U.S.C. § 1331, as it arises under laws of the United States, and specifically via 18 U.S.C. § 1836(c), which grants "[t]he district courts of the United States . . . original jurisdiction of civil actions brought under" the DTSA.

The court may further hear Plaintiff's state law claims based on supplemental jurisdiction because these claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (finding that supplemental jurisdiction allows

---

Director and served on Defendants, this issue is moot." (citation omitted)); *Wells Fargo Invs., LLC v. Bengtson*, No. 0:07-cv-3192 (MJD/AJB), 2007 WL 2007997, at *1 (D. Minn. July 9, 2007) ("Bengtson initially asserted that the Court was without jurisdiction because he alleged Wells Fargo had failed to follow NASD Rule 13804(a). However, this argument is moot because Wells Fargo has, in fact, filed the required claim with the NASD."). Accordingly, the court **DENIES WITHOUT PREJUDICE** Defendant's Motion to Dismiss. (ECF No. 8.)

parties to append state law claims over which federal courts would otherwise lack jurisdiction to federal claims, so long as "[t]he state and federal claims . . . derive from a common nucleus of operative fact"); *De La Rosa v. Reliable, Inc.*, 113 F. Supp. 3d 1135, 1152 (D.N.M. 2015) ("The court can then exercise supplemental jurisdiction over other claims and parties that 'form part of the same case or controversy under Article III.'" (citing first 28 U.S.C. § 1367, then *United Mine Workers*, 383 U.S. at 725)).

## II.     RELEVANT BACKGROUND TO PENDING MOTION

### A.     The Parties

Plaintiff is a limited partnership and a registered broker/dealer that operates more than 14,000 branches across the United States. (*See* ECF No. 1 at 2 ¶ 7.) Defendant was employed by Plaintiff as a financial advisor from December 2014 until his resignation on September 4, 2020. (*See id.* at 3 ¶ 14; ECF No. 9 at 10.) Defendant last worked for Plaintiff at an office in Aiken, South Carolina. (*See* ECF No. 1 at 2 ¶ 8.) Defendant is now employed as a financial advisor with Ameriprise Financial Services, LLC ("Ameriprise") in Aiken. (*See id.* ¶ 9.)

### B.     The Employment Agreement Between Plaintiff and Defendant

As a condition of his employment with Plaintiff, Defendant executed a "Financial Advisor Employment Agreement" (the "Agreement"). (*See id.* at 3 ¶ 15; *see also* ECF No. 1-1 at 3–8.) The Agreement provides, *inter alia*, that "all records of Edward Jones . . . including . . . the identities, names, addresses[,] and telephone numbers of any account and/or client are confidential, proprietary to Edward Jones[,] and constitute trade secrets of Edward Jones." (ECF No. 1-1 at 4 ¶ 13.) This "[c]lient information . . . remain[s] the exclusive property of Edward Jones at all times during [the employee's] employment and after the termination of [the] employment." (*Id.*)

The Agreement also contains a non-solicitation provision which states:

3

> [Y]ou agree for a period of one year following the termination of your employment, that you will not solicit by mail, phone, electronic communication, personal meeting, or any other means, either directly or indirectly, any clients of Edward Jones with whom you had direct contact during your employment with Edward Jones or about whom you have information nor knowledge of confidential information or Edward Jones Trade Secrets. . . . *Your agreement not to solicit means that you shall not, during your employment with Edward Jones, and for a period of one year thereafter, contact or communicate with . . . any Edward Jones client for the purpose of inviting, encouraging[,] or requesting any Edward Jones client to transfer from Edward Jones to you or your new employer . . ., to open a new account with you or your new employer[,] or to otherwise discontinue his/her/its patronage and business relationship with Edward Jones.*

(*Id.* at 5 (emphasis added).)

Paragraph 17 of the Agreement provides that "any dispute, claim[,] or controversy arising under this Agreement or as a result of your employment with Edward Jones between you and Edward Jones . . . shall be resolved by arbitration and without resort to litigation in court." (*Id.* at 6 ¶ 17.) Moreover, Paragraph 17 requires that any arbitration proceedings "be conducted in accordance with FINRA rules then in effect." (*Id.*) Notably, Paragraph 17 does not prohibit Plaintiff from "obtain[ing] equitable relief from a court of competent jurisdiction." (*Id.*) Such relief, the Agreement states, shall "remain in full force and effect pending the outcome of arbitration proceedings." (*Id.*)

Finally, the Agreement provides that it "shall be deemed to be a Missouri contract and governed by the laws of Missouri." (*Id.* at 7 ¶ 22.)

### C. Defendant's Resignation

Defendant terminated his employment with Plaintiff on September 4, 2020. (*See* ECF Nos. 1 ¶ 2, 9 at 1.) On the day he resigned, Defendant "provided [his supervisor] a resignation letter advising Plaintiff he was leaving[ ] and giving his new contact information." (ECF No. 9-1 at 2 ¶ 2.) Defendant attests he "le[ft] the contents of [his] office intact and le[ft] all property of Edwards Jones secured in [his] office." (*Id.* ¶ 3.) Only his supervisor had a key. (*See id.*) Most of his

4

"personal belongings [still] remain at Edward Jones." (*See id.*) After resigning, Defendant began working for Ameriprise in Aiken, South Carolina. (*See id.* ¶ 2; *see also* ECF No. 1 at 2 ¶ 9.)

### D. Defendant's Subsequent Communications with Clients

Plaintiff submits affidavits from two current employees, Craig Archer and Kristin Flake, that describe Defendant's interactions with Plaintiff's clients immediately following his resignation. (*See* ECF Nos. 1-4, 1-5.) As of September 10, 2020, six days after Defendant resigned, at least six clients reported that Defendant had already called informing them that "he would like to continue doing business with them" at Ameriprise. (*See, e.g.*, ECF No. 1-4 at 2 ¶¶ 5–10.) The affidavits aver that several clients indicated that they had already received packets from Defendant containing paperwork required to "transfer [their] accounts [from Plaintiff] to Ameriprise." (ECF No. 1-5 at 3 ¶ 16.) Several clients have either indicated a desire to transfer or have already transferred their accounts from Plaintiff to Ameriprise as a result of Defendant's efforts. (*See id.* ¶¶ 12, 14, 15.)

One client's testimony is particularly illustrative. (*See generally* ECF No. 1-3.) On September 7, 2020, three days after his resignation, Defendant called Ms. Morgan Cottle. (*See id.* at 3 ¶ 4.) Defendant informed Ms. Cottle that "he had left Edward Jones and was going to Ameriprise." (*Id.* ¶ 5.) He then "specifically asked if [she] would follow him to Ameriprise." (*Id.* ¶ 6.) Defendant then sent Ms. Cottle a packet of information. (*See id.* ¶¶ 8–12.) The packet included several notices that Defendant wanted Ms. Cottle to transfer her Edward Jones accounts to Ameriprise. For example, the packet included a letter signed by Defendant informing Ms. Cottle that she is "begin[ning] the process of *transferring* [her] accounts to Ameriprise." (ECF No. 1-3 at 7 (emphasis added).) In addition, the packet informed Ms. Cottle that by "providing [her] personal information" and "account details" to Ameriprise, she was "authorizing [a] *transfer*" of

5

her accounts from Plaintiff to Ameriprise. (*Id.* at 9 (emphasis added).) The packet also included an unsigned declaration stating that Ms. Cottle "ha[s] made an independent decision to *transfer* [her] account(s) to Ameriprise to be serviced by [Defendant]." (*Id.* at 11 (emphasis added).) Perhaps most directly, the packet explicitly included a document called a "Full EAR Brokerage In-Kind Transfer Request" form.[3] (*Id.* at 19.)

The record suggests Defendant's efforts have been successful. As of October 26, 2020, approximately $11 million in assets have been transferred to Defendant at Ameriprise. (*See* ECF No. 1-5 at 4 ¶ 17.)

Defendant attests that he "did not take or retain any Edward Jones documents, customer information, or other information belonging to Edward Jones in any form." (ECF No. 9-1 at 2 ¶ 3.) He also generally denies "solicit[ing] any [of Plaintiff's] clients to move to Ameriprise." (*Id.* at 7 ¶ 17; *see also id.* ¶ 19 ("I did not, under any circumstances, solicit any of the clients I worked with while at Edward Jones. I simply informed my former clients about my transition to Ameriprise and answered their questions as accurately as I could.")). Instead, Defendant attests that he merely informed his former clients that he had left the company and joined Ameriprise. (*See id.* ¶ 17.) Defendant also alleges he only "sent Ameriprise documentation or account opening paperwork to those [Edward Jones] clients" who "told [him] they wished to continue their relationship with [him]." (*Id.* ¶ 18.) According to Defendant, "many of [his] clients at Edward Jones were clients [he] worked with and came to know as a CPA before joining Edward Jones." (*Id.* at 6 ¶ 14.)

E.     **Procedural History**

On October 27, 2020, Plaintiff filed this action for injunctive relief against Defendant. (*See generally* ECF No. 1.) The Complaint asserts claims for misappropriation of trade secrets under

---

[3] The record does not suggest that the packets Defendant sent other clients differ in-kind from the packet he sent Ms. Cottle.

6

the DTSA and the SCTSA as well as a claim for breach of contract.[4] (*See id.* at 15 ¶ 55–19 ¶ 88.) Thereafter, on October 27, 2020, Plaintiff filed the instant Motion. (ECF No. 5.) Defendant filed his Memorandum of Law in Opposition to Plaintiff's Motion on November 2, 2020, to which Plaintiff filed a Reply in Support of his Motion on November 9, 2020. (ECF Nos. 9, 16.)

The court heard argument from the parties on Plaintiff's Motion at a hearing on November 13, 2020. (ECF No. 19.) The court considers the merits of Plaintiff's Motion below.

### III.     LEGAL STANDARD

The court's authority to issue temporary restraining orders ("TRO") arises from Rule 65 of the Federal Rules of Civil Procedure. Rule 65 provides as follows:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). Motions for TROs are governed by the same general standards that govern the issuance of preliminary injunctions. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). A party seeking a TRO, therefore, must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama,*

---

[4] Plaintiff has also commenced arbitration proceedings with the FINRA Office of Dispute Resolution. (*See* ECF No. 1 at ¶ 6.) Under the FINRA Code of Arbitration Procedure for Industry Disputes, parties to a pending arbitration "may seek a temporary injunctive order from a court of competent jurisdiction." FINRA, Rule 13804(a). If temporary relief is granted by the court, an arbitration hearing on a request for permanent injunctive relief shall begin within fifteen days. *See* FINRA, Rule 13804(b)(1). Plaintiff, therefore, seeks to temporarily enjoin Defendant from soliciting clients in violation of the Agreement, including by using Plaintiff's confidential client information and/or trade secrets.

*Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009). The United States Court of Appeals for the Fourth Circuit no longer recognizes a "flexible interplay among the four criteria" for a TRO. *Real Truth*, 575 F.3d at 347. Each of the four requirements "must be fulfilled as articulated." *De la Fuente v. S.C. Dem. Party*, Civil Action No. 3:16-cv-00322-CMC, 2016 WL 741317, at *2 (D.S.C. Feb. 25, 2016).

## IV.     ANALYSIS

### A.     Plaintiff's Arguments

Plaintiff argues that the court should grant its TRO Motion because it is likely to succeed on the merits of its claims. (*See* ECF No. 5-1 at 10–17). First, Plaintiff asserts that the restrictive covenants in the Agreement are valid and enforceable as a matter of law, (*see id.* at 11-14), and that Defendant's "intentional[ ] and continual[ ] . . . solicit[ation of] Edward Jones clients" is a "clear violation of the Agreement," (*id.* at 14).

Second, Plaintiff argues that its "[c]lient [l]ists [c]onstitute [t]rade [s]ecrets," (*id.* at 17), and that Defendant misappropriated them in violation of the SCTSA and DTSA, (*see id.* at 20–22).

Third, Plaintiff argues that it will suffer irreparable harm if the TRO Motion is not granted because "[Plaintiff] must now contend with office instability, disruptions in its relationships with clients, the permanent loss of client relationships, and a difficulty in fulfilling its obligations to maintain the confidentiality of its clients' financial and other personal information." (*Id.* at 22–23.)

As to the balancing of the equities, Plaintiff argues that its continuing loss of current customers and prospective customers as a result of the information stolen by Defendant is far greater than the possible harm that Defendant would suffer if interim relief is granted. (*See id.* at

8

23–24). Plaintiff asserts that a TRO "will not prevent Defendant from continuing to work for Ameriprise, or any other competitor of Edward Jones." (*Id.* at 23.) Plaintiff asserts that "Defendant will not suffer any harm in the event the requested temporary restraining order" as he can "continue earning a livelihood in the securities industry in the Aiken, South Carolina area." (*Id.* at 24.)

Finally, Plaintiff argues that the court should grant the TRO Motion because it is in the public interest to uphold valid contracts, enforce restrictive covenants and employment agreements, and protect confidential information. (*See id.* at 24 (citing *Boon Ins. Agency, Inc. v. Lloyd*, Civil Action No. 3:20-cv-02980-JMC, 2020 WL 5052956, at *6 (Aug. 27, 2020); *Pearl Ins. Grp. v. Baker*, Civil Action No. 0:18-cv-02353, 2018 WL 4103333, at *5 (Aug. 29, 2018)).)

### B.     The Court's Review

#### 1.     *Merits of Plaintiff's Claims*

In order to obtain the requested relief, Plaintiff must first show that it is likely to succeed on at least one of its claims. *See League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 248 n.7 (4th Cir. 2014). "Although this inquiry [typically] requires plaintiffs seeking [a TRO] to make a 'clear showing' that they are likely to succeed at trial," *Real Truth*, 575 F.3d at 345, Plaintiff need not show a certainty of success for this federal court to issue such an order, *see* 11A Charles Alan Wright et al., *Federal Practice & Procedure* § 2948.3 (2d ed. 1995). *See also Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013). For purposes of the instant TRO Motion, the court limits its review to Plaintiff's allegations that Defendant breached the Agreement.[5] (*See* ECF No. 1 at 18 ¶ 81–19 ¶ 88.)

---

[5] The court observes that Plaintiff's TRO Motion also seeks relief as to its claims alleging violation of the DTSA and the SCTSA. (*See, e.g.*, ECF Nos. 1 at 20 ¶ 93, 5 at 1.)  Even though Plaintiff asserts that Defendant took confidential client information (*see, e.g.*, ECF No. 5-1 at 18), Defendant vehemently denies in a Declaration that he took Plaintiff's "documents, customer information, or other information." (*See* ECF No. 9-1 at 2 ¶ 3.)  To analyze the claims brought by Plaintiff under the DTSA and the SCTSA, the court presumes that it would have to make a finding

9

For the reasons articulated below, this court concludes that Plaintiff has met the requisite burden with respect to its claim for breach of contract. *See Edward D. Jones v. Clyburn*, Civil Action No. 7:20-cv-00433-GEC, 2020 WL 4819547, at *4 (W.D. Va. Aug. 8, 2020) (citing *Jackson v. Stinchcomb*, 635 F.2d 462, 476 (5th Cir. 1981) (holding that "the district court judge did not abuse his discretion in granting the preliminary injunction, . . . because [the plaintiff adequately] demonstrated that he was likely to succeed on the merits of his state law claim, a claim properly before the district court under the doctrine of pendent jurisdiction")); *see also Forestry Sys., Inc. v. Coyner*, Civil Action No. 1:11-cv-00295-RAW, 2011 WL 1457707, at *3 (M.D.N.C. Apr. 15, 2011) (concluding that because the plaintiff had sufficiently demonstrated that it was likely to succeed on the merits of its supplemental state-law claim, they were entitled to a TRO).

Under Missouri law, a party claiming a breach of contract must demonstrate "the existence of a valid contract, the rights of plaintiff and obligations of defendant under the contract, a breach by defendant, and damages resulting from the breach." *Gillis v. Principia Corp.*, 832 F.3d 865, 871 (8th Cir. 2016) (emphasis omitted) (quoting *Lucero v. Curators of Univ. of Mo.*, 400 S.W.3d 1, 5 (Mo. Ct. App. 2013)). Here, Defendant does not contest the validity of the Agreement or its non-solicitation provision. Instead, Defendant argues that he did not solicit any of Plaintiff's clients

---

regarding Defendant's credibility when he was not present at the hearing to testify. *Cf. Space Syss./Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 853 (E.D. Va. 2018) (To bring a claim under the DTSA, a plaintiff must establish: "(1) it owns a trade secret; (2) the trade secret was misappropriated; and (3) the trade secret implicates interstate or foreign commerce." (citing § 1836)); *Nucor v. Bell*, 482 F. Supp. 2d 714, 725 (D.S.C. 2007) ("To state a cause of action under SCTSA where a former employee has misappropriated trade secrets, . . . the plaintiff [has] to show: (1) the existence of a trade secret; (2) communicated in confidence by the plaintiff to the employee; (3) disclosed by the employee in breach of that confidence; (4) acquired by the defendant with knowledge of the breach of confidence; and (5) used by the defendant to the detriment of the plaintiff." (citation omitted)). Therefore, because there is a clear dispute in the record regarding whether there was a misappropriation, the court concludes that it cannot grant Plaintiff's TRO Motion on its claims alleging violation of the DTSA and/or the SCTSA.

10

in violation of the Agreement. (*See* ECF No. 9 at 23 (arguing that "[n]one of the customers were solicited or pressured by Mr. Barnes to move their accounts" from Edward Jones to Ameriprise).)

The court first turns to the contract to define the terms of the non-solicitation provision at issue. *See Sunex Int'l, Inc. v. Travelers Indem. Co. of Ill.*, 185 F. Supp. 2d 614, 617 (D.S.C. 2001); *see also Cowin v. Shelter Mut. Ins. Co.*, 460 S.W.3d 76, 79 (Mo. App. 2015). The definition of solicitation is provided in paragraph 13 of the Agreement which states:

> Your agreement not to solicit means that *you will not*, . . . for a period of one year [after your resignation], *initiate any contact or communication of any kind whatsoever for the purpose of inviting, encouraging, or requesting any Edward Jones client to transfer from Edward Jones to . . . your new employer*.

(ECF No. 1-1 at 5 ¶ 13 (emphasis added).) Under the Agreement, therefore, Defendant may not "initiate" *any* communication with an Edward Jones client with the purpose of "inviting, encouraging, or requesting" that the client "transfer" their accounts to Ameriprise. (*Id.*; *see Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421 (Mo. 2003) (citations omitted) ("The terms of a contract are [to be] read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning.").) Based on the evidence summarized above, *see supra* Part II.D, the court concludes that Defendant has breached the Agreement by initiating communications with Plaintiff's clients with the purpose of encouraging them to transfer from Edward Jones to Ameriprise. *See Adrian N. Baker & Co. v. Demartino*, 733 S.W.3d 14, 15-16 (Mo. App. 1987) (finding that the defendant violated a non-solicitation clause in an employment contract when they called former clients, scheduled meetings with them, sent them paperwork, and told some clients to continue doing business with them); *McCann v. Barton,* Civil Action No. 4:08-cv-00574-GAF, 2009 WL 900741, at *4–5 (W.D. Mo. Apr. 1, 2009), *aff'd*, 614 F.3d 893 (8th Cir. 2010) (finding solicitation where the defendant called clients and asked if they wished to engage with the defendant).

Defendant argues that he "did not solicit any clients to move their accounts to Ameriprise." (*See* ECF No. 9 at 17 (citation omitted).) Instead, he argues that he merely "advised them of his move and, if questions about their accounts, told them their accounts remained at Edward Jones and it was their choice whether to remain at Edward Jones and work with another advisor, continue to work with him by opening an account at Ameriprise, or move to a different firm." (*Id.* (citation omitted).) Defendant is correct that simply announcing one's transition from one firm to another, without any other action, does not constitute a solicitation under Missouri law. *See, e.g.*, *Edward D. Jones & Co., L.P. v. Kerr*, 415 F. Supp. 3d 861, 873 (S.D. Ind. 2019) (applying Missouri law and noting that a "majority of courts [ ] analyzing this issue . . . reject the theory that an 'announcement[ ]' [alone] . . . qualifies as a solicitation, even where an employment agreement prohibits both indirect as well as direct solicitations"). However, Defendant did more than just "[p]rovid[e] contact information to clients." (ECF No. 9 at 17.) He contacted specific clients to schedule appointments. (*See* ECF No. 1-4 at 2 ¶¶ 5, 6, 8, 10, & 3 ¶¶ 12, 13; ECF No. 1-5 at 2 ¶¶ 8–9, & 3 ¶¶10, 13, 15, 16.)  He explicitly asked at least one client to move their account to Ameriprise. (*See* ECF No. 1-3 at 3 ¶ 6 ("Mr. Barnes specifically asked me if I would follow him to Ameriprise.").) He sent paperwork smattered with references to transferring accounts to a slew of clients.[6] (*See generally* ECF No. 1-4 (listing at least five clients who received packets from Mr. Barnes); ECF No. 1-5 (same).) He followed up with at least one client to ensure that they properly filled out the transfer paperwork. (*See* ECF No. 1-3 at 36.) This simply is not a case where there is "*no* evidence to show that [Defendant] did anything but inform his former clients of his new employment." *Kerr*, 415 F. Supp. 3d at 874 (emphasis added). Rather, the record clearly

---

[6] Again, Defendant provides no evidence suggesting that the packets received by these clients were substantially different than the packet received by Ms. Cottle. (*See* ECF No. 1-3 (detailing numerous instances in the paperwork that inform the client that they are transferring their accounts from Edward Jones to Ameriprise).)

demonstrates that Defendant communicated with former clients with the intention of convincing them to transfer their accounts from Edward Jones to Ameriprise in contravention of the non-solicitation provision of the Agreement. (*See* ECF No. 1-1 at 5 ¶ 13); *accord Bank of Am., N.A. v. UMB Financial Servs., Inc.*, 4:09-cv-00574-DGK, 2009 WL 10672172, at *2, *4 (W.D. Mo. Dec. 23, 2009) (concluding that communications informing former clients with the steps needed to transfer existing investment accounts from one financial institution to another was relevant in considering whether a communication constituted impermissible solicitation under Missouri law). To conclude that paperwork filled with numerous references to the account transfer process are not intended to "invit[e], encourag[e], or request[ ] [ ] Edward Jones['s] clients to transfer from Edward Jones" to Ameriprise would contravene common sense and reason. (ECF No. 1-1 at 5 ¶ 13.)

### 2.     *Likelihood of Suffering Irreparable Harm Absent a TRO*

The party requesting a temporary restraining order must demonstrate that it will likely suffer irreparable harm absent the preliminary injunction. *See Winter*, 555 U.S. at 22–23. The harm to be prevented must be of an immediate nature and not simply a remote possibility. *See Am. Whitewater v. Tidwell*, Civil Action No. 8:09-cv-02665-JMC, 2010 WL 5019879, at *11 (D.S.C. Dec. 2, 2010) (citing *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003)). "When analyzing the irreparable harm element, there are two inquiries: (1) whether the plaintiff is indeed suffering actual and imminent harm; and (2) whether that harm is truly irreparable, or whether it can be remedied at a later time with money damages." *Sauer-Danfoss Co. v. Nianzhu Luo*, Civil Action No. 8:12-3435-HMH, 2012 WL 6042831, at *1 (D.S.C. Dec. 5, 2012) (quoting *First Quality Tissue SE, LLC v. Metso Paper USA, Inc.*, Civil Action No. 8:11-2457-TMC, 2011 WL 6122639, at *2 (D.S.C. Dec. 9, 2011)).

Plaintiff asserts that it "has already suffered[ ] and [will] continue[ to] suffer irreparable harm." (ECF No. 5-1 at 22.) Specifically, Plaintiff asserts "[a]s the direct result of [Defendant's] actions and breach of his Agreement, [it] must now contend with office stability, disruptions in its relationships with clients, the permanent loss of client relationships, and a difficulty in fulfilling its obligation to maintain the confidentiality of its clients' financial and other personal information." (*Id.* at 22–23.) The court finds that there is good cause to believe that immediate and irreparable harm has resulted to Plaintiff and will continue to manifest in the future to Plaintiff unless Defendant is restrained and enjoined by order of this court. *See, e.g.*, *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994) ("However, when the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied."). Alternatively, there is no evidence that Defendant will suffer any harm if Plaintiff's TRO Motion is granted.

### 3. *The Balance of Equities and the Public Interest Factors*

Generally, in determining whether to grant a motion for injunctive relief, "[t]he court must also consider the balance of hardships between the litigants and the impact on the public at large prior to issuing an injunction." *Uhlig, LLC v. Shirley*, Civil Action No. 6:08-cv-01208-JMC, 2012 WL 2458062, at *4 (D.S.C. June 27, 2012).

Above, the court found that Plaintiff will suffer irreparable harm without a temporary restraining order. Alternatively, the court has not been presented with any evidence that Defendant will suffer any harm if Plaintiff's TRO Motion is granted. (*See* ECF No. 5-1 at 23–24 (noting that Defendant will not be prevented from continuing to work for his current employer or any other competitor of Edward Jones in the Aiken, South Carolina area). The balance of equities, therefore,

tips in Plaintiff's favor because the court does not perceive any reason why Defendant's allegedly unauthorized use of Plaintiff's trade secret information deserves legal protection.

Finally, the court finds that the evidence before it at this time supports the conclusion that an injunction is in the public interest. *See, e.g.*, *T&S Brass & Bronze Works, Inc. v. Slanina*, Civil Action No. 6:16-03687-MGL, 2016 WL 9308098, at *4 (D.S.C. Nov. 22, 2016) (finding that the public has an interest in prohibiting a defendant from using a plaintiff's "intellectual property, confidential information, and trade secrets in violation of contractual and legal obligations.").

Having considered Plaintiff's evidence, this court concludes that Plaintiff has successfully shown that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest in this case. *See Winter*, 555 at 20; *The Real Truth About Obama*, 575 F.3d at 346–47. Accordingly, this court concludes that issuance of a Temporary Restraining Order is appropriate.

### 4.     *TRO Relief*

In accordance with Rule 65(d), this court provides that Defendant George (Heyward) Jones and all other persons in active concert or participating with him are restrained from:

> a. Soliciting, by mail, phone, electronic communication, personal meeting, or any other means, any customer of Edward Jones who Mr. Barnes served or whose name became known to Mr. Barnes during his employment with Edward Jones. Solicit means to initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Edward Jones customer, to transfer from Edward Jones to Mr. Barnes or Ameriprise, or otherwise discontinue its patronage and business relationship with Edward Jones;[7]
>
> b. Using, disclosing, or transmitting for any purpose Edward Jones' documents,

---

[7] "Confidential Information" means:

> all confidential, proprietary, or non-public information, whether or not in a written or recorded form, that George ("Heyward") Barnes had access to as an employee of Edward D. Jones & Co., L.P., including, but not limited to, any secrets or

15

materials, trade secrets, and and/or confidential or proprietary information pertaining to Edward Jones, its employees, its operations, and/or customers.

Defendant George (Heyward) Barnes is not prohibited from using information that is generally available to the public. To the extent Defendant George (Heyward) Barnes transferred any of Edward D. Jones & Co., L.P.'s Confidential Information to any device, Barnes should within three (3) days of his receipt of this Order, identify the information transferred and the device to which it was transferred.  To the extent that Defendant George (Heyward) Barnes has copies of Edward D. Jones & Co., L.P.'s electronic and hard copy files, documents, information and other property in his possession custody or control, Barnes should deliver a list identifying said items to Edward D. Jones & Co., L.P.'s within three (3) days of his receipt of this Order.

   5.     *Bond*

Rule 65 provides that "[t]he court may issue . . . a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  Plaintiff has not suggested what is an appropriate bond in this matter.  Given the short duration of a TRO under the circumstances presented in this matter,[8] the court will not require

---

confidential technology or proprietary information of Edward D. Jones & Co., L.P.., including, without limitation, customer lists, marketing plans or materials, methods and business practices in providing administrative services to government contractors, rating of insurance products, or any other trade secrets of Edward D. Jones & Co., L.P., or any matter or thing ascertained by George ("Heyward") Barnes through her employment with Edward D. Jones & Co., L.P., the use or disclosure of which matter or thing might reasonably be construed to be contrary to the best interests of Edward D. Jones & Co., L.P. or to give any other party a competitive advantage over Edward D. Jones & Co., L.P.

[8] Under FINRA, Rule 13804(b)(1), "[i]f a court issues a temporary injunctive order, an arbitration hearing on the request for permanent injunctive relief will begin within 15 days of the date the court issues the temporary injunctive order." In accordance with this rule, the court **DENIES WITHOUT PREJUDICE** Plaintiff's request for a preliminary injunction (ECF No. 5) and

Plaintiff to post a bond to take advantage of the relief granted in this Order. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999) (acknowledging the requirement that a district court set an injunction bond and also acknowledging that the court can set the bond "in such sum as the court deems proper").

## V.     CONCLUSION

For the reasons set forth above, the court **GRANTS** Plaintiff Edward D. Jones & Co., L.P.'s Motion for Temporary Restraining Order. (ECF No. 5.) This Temporary Restraining Order is effective immediately and will expire in fifteen (15) days. Defendant George (Heyward) Barnes' Motion to Dismiss (ECF No. 8) is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

November 20, 2020
Columbia, South Carolina

---

**DENIES AS MOOT** Defendant's Motion to Stay Proceedings and Compel Arbitration (ECF No. 8).